FILED

2014 Oct-24  AM 10:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CHARLOTTE LAVETT TURNER**, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action Number |
| **v.** | ) | **5:13-cv-02149-AKK** |
| | ) | |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION**, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | | |

## MEMORANDUM OPINION

Plaintiff Charlotte Lavett Turner brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that her decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court affirms the decision denying benefits.

### I. Procedural History

Turner protectively filed her application for Title XVI Supplemental

Security Income, (R. 120–24), on March 25, 2010, alleging a disability onset date of January 1, 1999, (R. 120), which she subsequently amended to January 31, 2009, (R. 22), due to diabetes, high blood pressure, bipolar disorder, rod in left leg, nerve damage in leg and feet, multiple car accidents, hip replacement, asthma, and hepatitis, (R. 162). After the SSA denied her applications on March 23, 2011, (R. 72–76), Turner requested a hearing, (R. 77–79). At the time of the hearing on June 8, 2012, Turner was forty-six years old, (R. 47), had an eleventh-grade education, *id.*, and had past medium unskilled work as a cook helper, (R. 64). Turner has not engaged in substantial gainful activity since March 25, 2010, the date of her application for benefits, (R. 24).

The ALJ denied Turner's claim on July 2, 2012, (R. 19–34), which became the final decision of the Commissioner when the Appeals Council refused to grant review on September 24, 2013, (R. 1–6). Turner then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Turner had not engaged in substantial gainful activity since she applied for benefits and therefore met Step One.  (R. 24).  Next, the ALJ acknowledged that Turner's severe impairments of insulin dependent diabetes mellitus, hypertension, obesity, status post right hip arthoplasty in 1998, status post open reduction and internal fixation for a left lower leg fracture, depression/anxiety, and a history of drug and alcohol abuse met Step Two. *Id*.  The ALJ then proceeded to the next step and found that Turner did not satisfy Step Three since she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . ." *Id*.  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where she determined that Turner:

> has the residual functional capacity to perform sedentary work as

defined in 20 CFR 416.967(a) except [that she] can frequently lift and
carry up to 10 pounds; that she can stand and walk for 2 hours and sit
for 6 hours during an eight hour workday; that she needs a sit/stand
option with the ability to alternate between sitting and standing every
30 minutes; that she cannot do any pushing or pulling with the right
lower extremity; that she can do occasional postural movements, such
as balancing, stooping, kneeling, etc.; that she cannot do any
repetitive bending or twisting at the waist; that she needs work that
does not involve exposure to polluted environments, respiratory
irritants, or temperature extremes; and that she needs work that does
not involve any close cooperation or interactions with coworkers or
the general public and does not demand close supervision.

(R. 25). In light of Turner's residual functional capacity ("RFC"), the ALJ

determined that Turner was unable to perform any past relevant work because she

"cannot perform her past relevant work with the restrictions" in her RFC. (R. 30).

Lastly, in Step Five, the ALJ considered Turner's age, education, work experience,

and RFC, and determined, based on the Medical Vocational Guidelines found in

20 C.F.R. Part 404, Subpart P, Appendix 2, sections 201.18 and 201.24 and on the

testimony of a vocational expert, that "there are jobs that exist in significant

numbers in the national economy that [Turner] can perform." (R. 30). Because the

ALJ answered Step Five in the negative, she determined that Turner was not

disabled. *Id*.

## V. Analysis

Turner contends that the ALJ erred by 1) failing to take Turner's

psychological impairments into account when determining Turner's RFC; 2)

rejecting Dr. Thomas Tenbrunsel's opinion regarding Turner's functional

limitations and failing to recontact Dr. Tenbrunsel for clarification of his opinion;

3) rejecting Dr. Prem Gulati's opinion that Turner is unable to work; and 4) failing

to obtain another consultative examination. The court will examine each

contention in turn.

*A. The ALJ properly considered Turner's psychological impairments when determining Turner's RFC.*

Turner seems to argue that the ALJ failed to consider Turner's

psychological impairments when determining Turner's RFC. Doc. 7. More

specifically, Turner contends that while determining whether Turner's

psychological impairments met or medically equaled a listed impairment at Step

Two of the Five Step sequential analysis, the ALJ determined that Turner's

depression, anxiety, and history of substance abuse were "'severe' impairments

within the meaning of the regulations, which have resulted in a mild restriction of

daily living activities, moderate difficulty with maintaining social functioning, and

mild difficulty with maintaining concentration, persistence and pace," (R. 24),

"[a]s the ALJ herself observed, these findings do not amount to a mental [RFC,]

which requires a more detailed analysis," doc. 9 at 7. Turner seems to contend

that, in spite of this observation regarding the sufficiency of her findings at Step Two, the ALJ's consideration of Turner's psychological impairments when determining Turner's RFC was limited to "stat[ing] that [the ALJ's] RFC findings reflect this [i.e. the Step Two] analysis," and that consequently "this finding alone was insufficient to meet the requirements of the Social Security Administration's rules and regulations." *Id.*

Turner's argument regarding the ALJ's RFC analysis fails to account for a significant portion of the ALJ's opinion. At Step Four of the Five Step sequential analysis, the ALJ found that Turner's "allegations regarding panic attacks and seeing and hearing things that are not there are . . . not supported by the medical evidence of record." (R. 28). The ALJ noted that, following a consultative examination conducted on February 11, 2011, Dr. Tenbrunsel, a psychologist:

> diagnosed [Turner] as having a major depressive disorder, recurrent, severe, possibly with psychotic features from time to time; panic anxiety with agoraphobia; attention deficit hyperactivity disorder (ADHD), combined type; and the need to rule out below average or borderline intellectual functioning. He stated that she may have difficulty with maintaining employment; understanding, remembering and carrying out instructions; and responding appropriately to supervisors and coworkers.

(R. 29). The ALJ continued, stating that:

> The undersigned finds that the opinion of Dr. Ten[]brunsel is not entitled to any evidentiary weight. Dr. Ten[]brunsel assessed the claimant as having severe depression, anxiety with panic and agoraphobia, and ADHD.

> However, a review of the record does not show any previous mental health treatment for any impairments. Dr. Gulati did not observe any depression when he examined the claimant the day before the examination by Dr. Ten[]brunsel. Furthermore, the claimant did not mention having any problems with depression or anxiety to Dr. Gulati. The records of the Community Free Clinic and Birmingham Health Care show no treatment for, nor complaints of, any depression, anxiety, or any other type of mental impairment. The claimant's daily living activities are also inconsistent with the assessment of Dr. Ten[]brunsel. In particular, the claimant stated in her "Function Report" that her ability to follow written and spoken instructions is "good." She further stated that she "can pay attention as long as it takes." She also stated that she watches television and reads, activities which require a degree of concentration. She also stated that she goes for walks with her sister, goes shopping with her sister, and attends church, activities which are inconsistent with a diagnosis of agoraphobia.

*Id*. As the preceding excerpt indicates, the ALJ did not merely state that Turner's RFC reflected the ALJ's analysis of Turner's psychological impairments at Step Two of the Five Step sequential analysis. Rather, she assessed the record and determined it did not support Turner's claims of debilitating mental illness. *See e.g.*, *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (finding that the ALJ properly discredited the plaintiff's statements regarding his subjective symptoms because they were inconsistent with his account of his daily activities and his medical records). In sum, the ALJ properly considered Turner's psychological impairments when determining Turner's RFC.

Moreover, substantial evidence supports the ALJ's failure to include limitations related to Turner's psychological impairments in Turner's RFC beyond

those she discerned at Step Two. The sole evidence in the record indicating that

Turner suffers from psychological impairments are Turner's hearing testimony[1]

and Dr. Tenbrunsel's examination, diagnoses, and opinion regarding Turner's

limitations, described above. Turner's hearing testimony regarding her

hallucinations and panic attacks are vague, at best, and, as the ALJ correctly noted,

her credibility is undermined by numerous inconsistencies between her account of

her symptoms and limitations and the record as a whole. (R. 27–28); *see also*

*Wilson v. Barnhart*, 284 F.3d 1219, 1226 (stating that when an ALJ rejects a

claimant's "subjective testimony, [he must] articulat[e] in detail [] the contrary

evidence as his reasons for doing so"). More dispositively, after conducting an

independent review of the record, the court concludes that it neither supports

Turner's seeming claims of disability psychological impairment nor the degree of

---

[1] At the hearing, Turner testified that "I go outside and stuff, but I can only be out there for so long before I start hearing voices and stuff," adding later that she sometimes sees things as well, and that she also hears and sees things indoors, but "not as bad as I do outside." (R. 52, 53). Turner and the ALJ also had the following exchange regarding Turner's panic attacks:

> Q: Tell me what that means. What's a panic attack?
> A: It's just that I have them. I don't know why, you know?
> ...
> Q: And what happens when you have a panic attack? What's the feeling?
> A: Just scary, just real scary.
> Q: What do you do when you get a panic attack? What's the best thing to do?
> A: Well, I call my sister. I always call my sister, and she'll talk to me on the phone or something and tell me to calm down. She talked me down out of it.

(R. 53).

impairment opined by Dr. Tenbrunsel.

In conjunction with her application for benefits, Turner prepared a function report, in which she described taking daily walks with her sister (R. 139), embarking on weekly shopping trips with her sister (R. 142), and spending time with family members and attending church twice a week, (R. 143). She reported that she enjoys reading and watching television, and that she reads more than she watches television. *Id.* Most tellingly, she reported no difficulty getting along with authority figures, family, friends, neighbors, or others, that she can pay attention as long as necessary, and that her ability to follow written and verbal instructions is good. (R. 144, 145). Turner's sister, Gail Foster, completed a contemporaneous, virtually identical third party function report, which contained the same statements about Turner's daily activities, hobbies, and her ability to get along with others, maintain attention, and follow instructions. (R. 150–57). These reports are critical because they indicate that, to the extent Turner's accounts of hallucinations and panic attacks are credible, the conditions do not prevent her from engaging in normal activities and because they undermine Dr. Tenbrunsel's opinion that Turner may have difficulty "understanding, remembering, and carrying out instruction; and responding appropriately to supervisors and co-workers," *see* (R. 243).

Similarly, Turner's medical records contain no indication that she suffers from a significant psychological impairment. Simply put, the record contains no evidence that Turner has ever received mental health treatment or that any medical provider has ever prescribed psychiatric medication to her. In her disability application, Turner stated that she received treatment at the "Mental Health Center" from 1980 until 1986, (R. 167), but the Mental Health Center of Madison County was unable to produce any records associated with her treatment, (R. 235).[2] She told the Alabama Disability Determination Service examiner that she received treatment for bipolar disorder while living at the Lovelady Transitional Center in early 2010 following her incarceration, but the medical records associated with her stay at Lovelady contain no indication that she was treated for mental health issues.[3] Although Turner testified that The Community Free Health Clinic, where she has received her most recent medical care, does not treat mental

---

[2] It appears that the Mental Health Center may not have retained records from the period in question. *See* (R. 235) ("We have no records for the dates of service you requested.").

[3] These records, like the record as a whole, contain no indication that Turner received mental health treatment or that a medical professional prescribed her psychiatric medication. *See generally* (R. 195–207). At one office visit during this period, when filling out a form asking her to check all applicable conditions, she checked "asthma," "high blood pressure," "vision problems," "severe headaches," "arthritis," "hepatitis," and "diabetes," but not "depression" or "mental illness," (R. 203), and denied feeling "down, depressed or hopeless," or "little interest or pleasure in doing things" during the preceding two weeks, (R. 204). Most of the treatment notes from Lovelady are illegible, but in them, the space for noting psychological observations are either empty, (R. 205, 207), or indicated that the provider had conducted an examination and made normal observations, (R. 206) (noting that P was "alert").

health problems, she testified that she had discussed her psychological issues with

its staff. (R. 61). Nonetheless, the only indication of psychological distress in

Turner's records from the clinic, (R. 275–79), is a notation that on one particular

visit, Turner felt "nervousness,"(R. 279). Records generated in conjunction with

three visits to Huntsville Hospital's Emergency Room, (R. 208–33; 291–343), are

similarly devoid of any allegations of current mental illness[4] or psychological

distress.[5]

Finally, Dr. Gulati, who examined Turner on February 21, 2011, one day

prior to her examination by Dr. Tenbrunsel, made no mention in his report of any

psychological impairments.[6] Although Turner provided Dr. Gulati with a detailed

medical history and account of her current impairments, she appears to have made

---

[4] During a August 10, 2010 emergency room visit, Turner reported that she took medications for bipolar disorder when she was fourteen years old. (R. 229).

[5] Turner sought treatment at Huntsville Hospital's Emergency Room after falling and cutting her leg, (September 16, 2011, *see* R. 298)), for back pain, (September 8, 2010, *see* R. 304)), and for chronic pain and a shoulder laceration, (August 10, 2010, *see* R. 309)).

[6] Turner faults the ALJ for "fail[ing] to explain why she relied on Dr. Gulati's report for one purpose and not for the purpose for which it was obtained." Doc. 9 at 9. It appears that Turner takes issue with the ALJ using the inconsistency between Dr. Gulati's report and Dr. Tenbrunsel's report to discredit the later. *Id.* Because, as explained above, the inconsistency between the two reports was only one of many inconsistencies between Dr. Tenbrunsel's report and the record as a whole, and because an "ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion," *McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006) (citing *Bloodsworth* , 703 F.2d at 1240), so long as the ALJ "state[s] with particularity the weight he gives to different medical opinions," *id.* (citing *Sharfarz v. Bowen*, 825 F.3d 278, 279 (11th Cir. 1987)), as the ALJ did here, it is unsurprising that Turner fails to cite to any legal authority indicating that the ALJ erred on this point.

no mention of experiencing psychological problems. (R. 237). Similarly, although Dr. Gulati conducted a thorough examination, he observed no psychological distress. (R. 238–39). This is somewhat remarkable, since the following day, Turner provided Dr. Tenbrunsel with an account of her medical history and current impairments and displayed a range of symptoms that led Dr. Tenbrunsel to diagnose Turner with several psychological conditions and assign her a corresponding degree of functional limitation. (R. 241–43).

In the final analysis, the ALJ properly considered Turner's psychological impairments when determining Turner's RFC. Moreover, because Turner's medical records simply contain no evidence that she suffered from psychological impairments during the disability period, substantial evidence supports the ALJ's decision only to impose the restrictions on Turner's RFC that the ALJ discerned at Step Two of the Five Step sequential analysis. As the court explained in Part II, substantial evidence falls somewhere between a scintilla and a preponderance of evidence, and, if supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. The evidence has reached that threshold here.

*B. The ALJ properly rejected Dr. Tenbrunsel's opinion regarding Turner's functional limitations and did not err by failing to recontact Dr. Tenbrunsel for clarification of his opinion.*

Turner next contends that the ALJ erred by rejecting Dr. Tenbrunsel's opinion. As explained above, Dr. Tenbrunsel opined that Turner "may have difficulty maintaining employment[7]; understanding, remembering, and carrying out instructions; and responding appropriately to supervisors and co-workers." (R. 243). As a preliminary matter, Turner's argument is partially undermined because the ALJ *did* include restrictions in Turner's RFC that reflect Dr. Tenbrunsel's opinion with regard to his concern about Turner's ability to interact appropriately with supervisors and coworkers, namely that "[Turner] needs work that does not involve any close cooperation or interactions with coworkers or the general public and does not demand close supervision." (R. 25). As to Dr. Tenbrunsel's remaining opinion regarding Turner's ability to understand, remember, and carry out instructions, the ALJ did not err by disregarding it for two reasons. First, although statements from acceptable medical sources about a claimant's functional limitations are relevant evidence, they are not determinative as the ALJ is

---

[7] A medical source's opinion that a patient may be unable to work is an opinion on an issue reserved to the Commissioner, and not entitled to any special significance. 20 C.F.R. § 416.927(d).

responsible for assessing a claimant's RFC. *See* 20 C.F.R. §§ 416.913(b)(6); 416.927; 416.946(c). Second, as explained at length in Part V.A., Dr. Tenbrunsel's stark diagnoses and opinions regarding Turner's functional capacity are inconsistent with the record as a whole.[8] Most tellingly, Dr. Tenbrunsel's opinion that Turner may be unable to understand, remember, and carry out instructions is flatly contradicted by the functional reports prepared by Turner and her sister, in which they indicated that Turner's ability to follow written and verbal instruction is "good" and that she can maintain attention for as long as necessary. (R. 145, 155); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (finding that an ALJ properly afforded little weight to a treating physician's[9] opinion when it was inconsistent with a claimant's own account of her daily activities). In sum, contrary to Turner's contention, Turner's RFC is consistent with much of Dr. Tenbrunsel's opinion, and the part of Dr. Tenbrunsel's opinion that the ALJ rejected was inconsistent with Turner's own statements about her function capacity.

Finally, as related to Dr. Tenbrunsel, Turner contends that the ALJ should

---

[8] The report of the state agency psychologist, (R. 249–62), was apparently based on Dr. Tenbrunsel's report and echoes its diagnoses and limitations. The ALJ correctly disregarded it for this reason and, because Dr. Tenbrunsel's report is inconsistent with the record, as explained above, the court does as well.

[9] Generally, a treating physician is entitled to more deference than a consulting physician, such as Dr. Tenbrunsel. 20 C.F.R. 404.1527(c)(2).

have recontacted Dr. Tenbrunsel for clarification of his opinion. Doc. 9 at 8.

However, pursuant to new regulations, which were in effect at the time of Turner's

hearing and the ALJ's decision[10], the decision whether to recontact a treating

source is now entirely within the discretion of the ALJ. 20 C.F.R. §

416.920b(c)(1). Simply put, the ALJ was under no obligation to recontact Dr.

Tenbrunsel.

*C. The ALJ properly rejected Dr. Gulati's opinion that Turner is unable to work*

Turner contends that the ALJ erred by rejecting Dr. Gulati's opinion that

Turner is unable to work. Doc. 8 at 9–11. In his report, Dr. Gulati stated that "[i]t

is my impression that [Turner] will not be able to do any gainful employment since

she has not been working since 2004." (R. 239). Turner's argument falls short for

two reasons. First, as noted in Part V.B., a medical source's opinion that a patient

may be unable to work is an opinion on an issue reserved to the Commissioner,

and not entitled to any special significance. 20 C.F.R. § 416.927(d). Second, Dr.

Gulati explicitly stated that "[i]t is my impression that [Turner] will not be able to

do any gainful employment *since she has not been working since 2004*"; his

opinion is clearly based on Turner's work history rather than her medical

---

[10] The regulations in question took effect on March 26, 2012. *See* How We Collect and
Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,651 (Feb. 23, 2012). Turner's hearing
before the ALJ took place on June 8, 2012, (R. 43), and the ALJ issued her opinion on July 2,
2012, (R. 19).

condition, and is consequently not supported by objective medical evidence. *See Edwards v. Sullivan*, 937 F.2d 580, 583–84 (11th Cir. 1991) (finding that good cause existed for rejecting a treating physician's opinion when it was not supported by objective medical evidence). Although Turner contends that "Dr. Gulati did not expressly state that [Turner's work history] was the only reason . . . Turner would not be able to work," and that it "is more likely than not, based on the whole concept of the consultative physical examination and evaluation, that his conclusion was based in part if not primarily on his findings and review of the medical evidence," doc. 8 at 11, the court declines to attach further, speculative meaning to Dr. Gulati's statement in light of the plain language regarding the basis of his opinion.[11] In sum, because it was an opinion on an issue reserved to the Commissioner and not supported by objective medical evidence, the ALJ did not err by rejecting Dr. Gulati's opinion that Turner is unable to work.

*D. The ALJ did not err by failing to obtain another consultative examination.*

Finally, Turner seems to argue that the ALJ should have further developed the record by ordering another consultative examination. Doc. 9 at 11–12. Turner also seems to concede that this argument is a nonstarter because "there is no

---

[11] To the extent Turner argues the ALJ should have recontacted Dr. Gulati, doc. 9 at 11, the court again notes that the decision whether to recontact a treating source is entirely within the discretion of the ALJ. 20 C.F.R. § 416.920b(c)(1).

express requirement for a Medical Source Opinion or RFC assessment to be of record in order for the ALJ to make RFC findings." *Id*. at 11. However, even if Turner did not waive this argument, it does not entitle her to relief. Although "the ALJ has a duty to develop the record fully and fairly," *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999), that duty, generally, is limited to "develop[ing a claimant's] complete medical history for at least the 12 months preceding" a claimant's filing date "unless there is a reason to believe that development of an earlier period is necessary," 20 C.F.R. 416.912(d). An ALJ "*may* purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to allow [him] to make a determination or decision on [a] claim." 20 C.F.R. 1519a(b) (emphasis added). Turner has neither pointed to an inconsistency in the evidence nor an evidentiary insufficiency that would be grounds for an additional consultative examination. Moreover, even if she had made such a showing, ordering an examination would be left to the discretion of the ALJ. Consequently, the ALJ did not err by failing to order an additional consultative examination.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Turner is not disabled is supported by substantial evidence, and that the ALJ

applied proper legal standards in reaching this determination. Therefore, the

Commissioner's final decision is affirmed. A separate order in accordance with the

memorandum of decision will be entered.

Done this 24th day of October, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE